1996 SD 106

**FALL RIVER COUNTY, a Political Subdivision of the State of South Dakota, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE and Burlington Northern Railroad Co., Appellees.**

**EDGEMONT SCHOOL DISTRICT 23–1, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE and Burlington Northern Railroad Co., Appellees.**

Nos. 19379, 19380.

Supreme Court of South Dakota.

Argued May 21, 1996.

Decided Aug. 28, 1996.

Patrick M. Ginsbach, Fall River County State's Attorney, Hot Springs, for appellant Fall River County.

Richard A. Pluimer of Carr and Pluimer, Belle Fourche, for appellant Edgemont School District 23-1.

Mark Barnett, Attorney General, David D. Wiest, Assistant Attorney General, Pierre, for appellee South Dakota Department of Revenue.

Mark F. Marshall of Johnson, Heidepriem, Miner & Marlow, Sioux Falls, and Richard A. Malm of Dickinson, Mackaman, Tyler & Hagen, Des Moines, IA, for appellee Burlington Northern Railroad Co.

MILLER, Chief Justice.

[¶ 1] Fall River County and Edgemont School District appeal the trial court's partial affirmance and partial reversal of the 1993 tax assessment of Burlington Northern Railroad (BNRR) performed by the South Dakota Department of Revenue (Department). We affirm in part, reverse in part, and remand.

## FACTS

[¶ 2] BNRR is an interstate railroad that operates in twenty-seven states and two Canadian provinces. It owns railroad operating property in seventeen counties in South Dakota. Part of BNRR's operating property is located in Fall River County, wherein Edgemont School District is located.

[¶ 3] Under South Dakota law, BNRR's operating property is subject to tax assessment by Department. SDCL 10–28–1. The assessment process requires valuing the railroad operating property as a total unit, allocating a proportionate value to the state, and then distributing the taxable value among local taxing jurisdictions. SDCL 10–28–9, –12 and –16.

[¶ 4] Department calculated BNRR's total value at $3,412,000,000. Department determined BNRR's statewide fair market value to be $44,173,000 for the 1993 assessment year. Roughly half of this statewide total, $21,753,534, was distributed to Fall River County. This figure was then equalized at 67.8%. Consequently, the value of BNRR's property subject to tax in Fall River County was $14,748,897 for the 1993 assessment year.

[¶ 5] Fall River County and Edgemont School District appealed this assessment to the circuit court. They contended the assessment was too low and raised two primary issues: (1) whether Department's method of assessing BNRR's total unit value was correct; and (2) whether Department allocated to South Dakota its fair share of BNRR's total unit value.

[¶ 6] At trial before the circuit court, Department acknowledged various errors in valuing and allocating BNRR's taxable value. Department submitted a revised assessment for 1993 that valued BNRR's total operating property at $3,414,383,500 (approximately

$2.4 million more than the original valuation) and allocated 1.9193% (rather than 1.8374%) of this value to South Dakota. After applying a deduction for personal property owned by BNRR, the revised statewide value was roughly $44,204,000, only slightly more than the original figure submitted by Department.

[¶ 7] In its findings and conclusions, the trial court largely adopted the revisions of BNRR's total value and the new statewide figure offered by Department. However, in response to a summary judgment motion by BNRR, the trial court further ruled that Department had erred in its distribution of taxable value among South Dakota counties. Department had distributed BNRR's statewide value based on a formula that considered not only the miles of railroad track in each county, but also the density of rail traffic on these lines. The trial court interpreted South Dakota law as requiring distribution of value based only on the miles of track in each county. *See* SDCL 10–28–16 (prior to 1996 amendment, 1996 S.D. Sess. L. ch. 78, § 1). Because Fall River County has a comparatively short length of heavily traveled track, its 1993 assessment for BNRR decreased from $14,748,897 to approximately $2,050,000 under the trial court's ruling.[1]

[¶ 8] County and School District appeal, claiming the trial court erred in: (1) applying a deferential standard of review to Department's assessment; (2) approving Department's modified valuation of BNRR; (3) adopting Department's figures for allocating total value to the state; (4) ruling that federal law requires the deduction of BNRR's personal property from its statewide taxable value; and (5) holding that SDCL 10–28–16 mandates distribution of statewide taxable value to counties solely on the basis of miles of track in each county and does not permit consideration of traffic density.

## ISSUES

[¶ 9] **I. Did the trial court err in applying the standard of review set forth in SDCL 1–26–36 to an appeal brought by governmental entities under SDCL 10–38–30 through –34?**

The provisions of SDCL 10–38–30 to –34 give local governments the right to appeal

taxing decisions by Department concerning centrally assessed utilities. SDCL 10–38–31 provides that all such appeals "shall be considered de novo by the sixth judicial circuit in Hughes County."

[¶ 10] In assessment appeals *by a taxpayer*, de novo review requires the circuit court to hear evidence and apply independent judicial judgment to determine valuation. *Chicago and Northwestern Railway v. Gillis*, 82 S.D. 470, 484, 148 N.W.2d 581, 590 (1967). The circuit court sits as another board of assessment and is not required to give any deference to the decision below. *Riverview Properties, Ltd. v. South Dakota State Bd. of Equalization*, 439 N.W.2d 820, 822 (S.D. 1989); *Chicago, Milwaukee, St. Paul and Pacific Railroad Co. v. Bd. of Commissioners of Walworth County*, 248 N.W.2d 386, 391 (S.D.1976) (citing *In re Robinson*, 73 S.D. 580, 46 N.W.2d 908 (1951)).

[¶ 11] Interestingly, the trial court in this case differentiated between taxpayer appeals and appeals brought by a subdivision of the State, such as a county or school district. The court reasoned that taxpayers have a state constitutional right of uniformity and equality of taxation that does not apply to local governments. The court further noted that Article II of the South Dakota Constitution recognizes the separation of powers among the legislative, executive and judicial branches of government and that County and School District were creatures of the state. The court concluded that, when a county or school district appeals a tax assessment by Department, it is "a dispute between agencies of the executive branch of government concerning the discharge of their executive powers." Citing the separation of powers doctrine, the court ruled the case must be reviewed according to the more deferential standard of review set forth in SDCL 1–26–36, which provides:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court

---

1. These figures include adjustment for equalization at 67.8%.

may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court shall enter its own findings and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

[¶ 12] Citing SDCL 10–38–31, the statute expressly requiring "de novo" review, County and School District claim the trial court erred when it adopted the more deferential standard of review contained in SDCL 1–26–36. We agree.

[¶ 13] Construction of a statute is a question of law, and we give no deference to the trial court's interpretation. *In re Certification of a Question of Law from the United States District Court*, 1996 SD 16, ¶ 4, 543 N.W.2d 787, 789 (citing *Stover v. Critchfield*, 510 N.W.2d 681, 683 (S.D.1994)); *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D.1995). "We interpret statutes in accord with legislative intent." *Id.* (citing *Whalen v. Whalen*, 490 N.W.2d 276, 280 (S.D.1992)). "Such intent is derived from the plain, ordinary and popular meaning of statutory language." *Id.* (citing *Whalen*, 490 N.W.2d at 280).

[¶ 14] In this case, SDCL 10–38–31 plainly provides for "de novo" review. De novo refers to a plenary form of review that affords no deference to the previous decision maker. *Grode v. Grode*, 1996 SD 15, ¶ 6, 543 N.W.2d 795, 799 (citing *Bess v. Bess*, 534 N.W.2d 346, 347 (S.D.1995)). Although the trial court concluded that the separation of powers doctrine mandated a more limited review, we do not agree. First, the taxpayer's constitutional right to uniformity and equality of taxation is not jeopardized by de novo consideration of an appeal brought by a governmental entity or taxing district. The court is simply required to conduct its review in keeping with constitutional mandates, as it does when reviewing taxpayer appeals. Second, contrary to the trial court's conclusion, this case does not violate the separation of powers doctrine. The trial court characterized this case as "a dispute between agencies of the executive branch of government concerning the discharge of their executive powers." However, the process of tax assessment is not a purely executive or political function that must be protected from judicial encroachment. In fact, tax assessment is a "quasi-judicial" function. *Williams v. Stanley County Bd. of Equalization*, 69 S.D. 118, 124–25, 7 N.W.2d 148, 151 (1942); *Pierre Water–Works Co. v. County of Hughes*, 37 N.W. 733 (1888). SDCL 1–32–1 defines a "quasi-judicial function" as

... an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations in controversies. The term includes the functions of interpreting, applying, and enforcing existing rules and laws; granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; holding hearings; adopting procedural rules or performing any other act necessary to effect the performance of a quasi-judicial function.

*See also In re Application of Union Carbide*, 308 N.W.2d 753, 757 (S.D.1981) (" 'The *sine qua non* of an adjudicatory proceeding is the individual, particular, and immediate nature of the action as distinguished from the general and future nature of the rulemaking process.' ") (quoting *Debruhl v. Dist. of Colum-*

*bia Hackers' License,* 384 A.2d 421, 425 (D.C.App.1978)).

[¶ 15] "Quasi judicial powers involving judgment and discretion are often, and must necessarily be, exercised by administrative and executive bodies and officers." *Hoyt v. Hughes County,* 32 S.D. 117, 126, 142 N.W. 471, 474 (1913) (Whiting, P.J., concurring). Nevertheless, we have recognized that quasi-judicial decisions made by the executive branch can be reviewed by the judiciary. *Williams,* 69 S.D. at 124–25, 7 N.W.2d at 151; *Pierre Water–Works Co.,* 37 N.W. at 741; *Hoyt,* 32 S.D. at 125–26, 142 N.W. at 474 (Whiting, P.J., concurring) (defining quasi-judicial power as "one involving judgment and discretion and which may be conferred upon an executive or administrative board as an incident to its duties, and from the exercise of which an appeal can be, and in this state often is, given to the courts").

[¶ 16] In asserting their separation of powers claim, BNRR and Department rely heavily on cases challenging school board decisions. In spite of a statute providing for de novo review, we have held that appeals of school board decisions must be reviewed under the more deferential standards contained in SDCL 1–26–36. *Dale v. Bd. of Education, Lemmon Independent Sch. Dist.,* 316 N.W.2d 108, 112–13 (S.D.1982). *See also Mortweet v. Ethan Bd. of Education,* 90 S.D. 368, 373–74, 241 N.W.2d 580, 582 (1976); *Dunker v. Brown County Bd. of Education,* 80 S.D. 193, 203, 121 N.W.2d 10, 16–17 (1963). However, that case law does not apply here because it involved government entities exercising *legislative* or *administrative* rather than quasi-judicial functions. *Mortweet,* 90 S.D. at 373, 241 N.W.2d at 582 (holding a school board's decision not to renew a teacher's contract for employment is an administrative function); *Dunker,* 80 S.D. at 203, 121 N.W.2d at 13 (ruling the formation of school districts is entirely within the power of the legislature and that the legislature had delegated that function to school boards). Judicial restraint is required when review of legislative or administrative functions is contemplated. *Dale,* 316 N.W.2d at 111–12; *Mortweet,* 90 S.D. at 373–74, 241 N.W.2d at 582–83; *Dunker,* 80 S.D. at 203, 121 N.W.2d at 16–17. However, we cannot discern any constitutional basis for limiting the scope of judicial review when the executive branch exercises quasi-judicial powers.

[¶ 17] We are also unwilling to adopt a different standard of review based on the identity of the parties rather than the nature of the authority exercised by the Department. Under the trial court's rationale, BNRR could appeal to the circuit court and invoke the traditional de novo standard of review. Meanwhile, an appeal by a county or school district would be considered by the court under a more deferential standard of review. As a result, decisions that are unfavorable to counties and school districts would be more difficult to overturn on appeal than decisions that are unfavorable to utilities. According such benefits to only one potential party in a dispute is inconsistent with a court's responsibility to be fair and even-handed.

[¶ 18] For all the above reasons, we conclude that a trial court reviewing an assessment of a centrally assessed utility should apply the de novo standard of review, regardless of whether the appeal is brought by a utility or by a governmental entity or taxing district. Nevertheless, we find no reversible error on this record. The trial court's findings and conclusions indicate that the court reviewed the case under both the deferential standards set forth in SDCL 1–26–36 and the more searching de novo standard. In its conclusions of law, the trial court wrote:

> Alternatively, since the scope of review question is one of first impression in this state, the Court will also apply the more traditional plenary standard of review as announced in the South Dakota Supreme Court decisions which preceded the enactment of SDCL § 10–38–31. Regardless of the standard of review applied the Court's decision is the same.

Based on our review of the record, we are convinced the trial court faithfully considered the case under both SDCL 1–26–36 and the de novo standard of review.

[¶ 19] As for our role in this appeal, we will review the trial court's factual findings under the clearly erroneous standard.

*Kindsfater v. Butte County,* 458 N.W.2d 347, 348 (S.D.1990) ("Our scope of review of a trial court's decision in a trial de novo of a tax assessment is to determine whether the findings are clearly erroneous."). "When applying the clearly erroneous standard, the question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been committed." *Hutchinson County v. Fischer,* 393 N.W.2d 778, 781 (S.D.1986) (citing *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970)). Questions of law are reviewed de novo. *Wertz,* 540 N.W.2d at 638.

**[¶ 20] II.  Did the trial court err in approving the Department's modified assessment of BNRR's value?**

▪ [¶ 21] At trial, Department agreed there were calculation errors in its original valuation and it submitted a corrected version. In its findings and conclusions, the trial court approved the corrected valuation offered by Department. County and School District contend the trial court clearly erred when it adopted Department's new valuation. They claim, individually or jointly, that the revised valuation was flawed because: (1) Department underemphasized the stock and debt method of ascertaining value while placing too much weight on the income and cost methods; (2) Department used a flawed methodology when determining value under the income approach; (3) Department incorrectly deducted $23 million from BNRR's total unit value on the grounds it represented nonoperating property; (4) Department improperly deducted $2.5 billion for property that was not obsolete; (5) Department's cost approach for determining value was redundant and had little relation to fair market value; and (6) Department failed to adequately account for property owned by Burlington Northern Leasing Corporation and leased to BNRR.

▪ [¶ 22] The valuation of railroad property is not a straightforward exercise. As we have previously observed:

There are no settled or infallible rules for the ascertainment of the actual value of railroad property for the purpose of taxation.... The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property.

*Chicago & Northwestern Railway v. Gillis,* 82 S.D. 470, 480, 148 N.W.2d 581, 587 (1967). The trial court entered lengthy findings and conclusions in support of Department's revised valuation. Although County and School District offered evidence to discredit Department's proffered valuation, we note the trial court's findings in Department's favor are supported by substantial evidence in the record. Furthermore, the trial court expressly found Department's appraiser was more credible than the experts who attacked Department's calculations and valuation methods. "Determining the credibility of the witnesses is the role of the factfinder. Where the trial court has resolved conflicts in evidence, we cannot change its findings." *Mash v. Cutler,* 488 N.W.2d 642, 653–54 (S.D. 1992) (citing *Gross v. Connecticut Mut. Life Ins. Co.,* 361 N.W.2d 259, 266 (S.D.1985)). We therefore reject County and School District's challenge to the trial court's valuation of BNRR operating property.

**[¶ 23] III.  Did the trial court err in its allocation of a portion of BNRR's nationwide value to the State of South Dakota?**

▪ [¶ 24] When a railroad company "owns or uses operating property partly within and partly without this state, the secretary of revenue shall determine the value of the entire operating property of such railroad and shall allocate or assign a part of said value to this state by the use of such factors or methods as are reasonable and equitable." SDCL 10–28–9. County contends the trial court erred in its allocation of a portion of BNRR's total unit value to this state. Rather than assigning 1.9193% of BNRR's statewide value to South Dakota, County contends the allocation figure should have been 2.47%, thereby increasing BNRR's

statewide tax assessment.[2]

[¶ 25] Like valuation, we conclude the proper allocation of total unit value to the state is a factual question subject to review by this Court under the clearly erroneous standard. Although County's expert urged application of the 2.47% figure, the trial court's allocation of only 1.9193% of total unit value was well supported by credible expert testimony. We find no clear error.[3]

[¶ 26] **IV. Did the trial court err in ruling that federal law requires the deduction of BNRR's personal property from its statewide taxable value?**

[¶ 27] Under South Dakota law, all railroad operating property, including personal property, is subject to centralized tax assessment by Department. SDCL 10–28–1 and –2. In contrast, personal property which is not centrally assessed is exempt from taxation. SDCL 10–4–6.1.

[¶ 28] In spite of the state statute requiring assessment of personal property belonging to railroads, the trial court upheld Department's decision to deduct approximately $18.5 million in personal property from BNRR's statewide assessment. The trial court reasoned that the deduction was required by federal law. Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 [4–R Act], 49 U.S.C. § 11503, which was in effect at the time of this assessment, prohibited tax discrimination against railroads as compared to all other commercial and industrial property.[4] Because personal property which is not centrally assessed is exempt from taxation in this state, the court reasoned that taxation of BNRR's personal property would discriminate against the railroad and therefore violate the 4–R Act. The court noted that a federal district court in South Dakota had

likewise interpreted the 4–R Act as requiring the deduction of personal property from a railroad company's assessment in South Dakota. *See Otter Tail Power Co. v. South Dakota,* Civ.No. 82–3044 (D.S.D. Mar. 30, 1984).

[¶ 29] County argues that a more recent United States Supreme Court decision, *Department of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), permits taxation of BNRR's personal property under the 4–R Act. The Court in *ACF* held "that a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge" under the 4–R Act. 510 U.S. at 339–41, 114 S.Ct. at 848, 127 L.Ed.2d at 170. However, the Court suggested that taxation of railroads "either alone or as part of some isolated and targeted group" could result in illegal discriminatory treatment under the 4–R Act. *ACF,* 510 U.S. at 346–47, 114 S.Ct. at 851–52, 127 L.Ed.2d at 177.

[¶ 30] The *ACF* decision allows exemptions from a *generally applicable* ad valorem property tax. In South Dakota, however, taxation on personal property is the exception rather than the general rule. Since 1978, all personal property which is not centrally assessed has been exempt from ad valorem taxation. SDCL 10–4–6.1; 1978 S.D. Sess. L. ch. 72 §§ 2, 9. Centrally assessed property only includes property owned by railroads, airlines, express companies, pipeline companies or utility companies providing telephone, telegraph, light, power, heating, water, gas, or rural electric services. SDCL 10–28–1; 10–29–2; 10–32–2 and –8; 10–33–10; 10–34–1; 10–35–2; 10–36–1 and –7, 10–37–1 and –9. Thus, the ruling in *ACF,* which upholds a generally applicable tax on personal property, does not apply here. Because only a small portion of commercial and industrial

---

**2.** Although County's and School District's notices of appeal to the trial court do not include the issue of allocation, all parties appear to have consented to the trial court's consideration of this issue. None of the parties argue that the trial court lacked jurisdiction over this issue, so we do not consider that question here.

**3.** Having affirmed the trial court's adoption of Department's revised valuation and allocation

figures, we need not consider County and School District's claim that the trial court cannot remand the case to Department for a redetermination of unit and statewide values.

**4.** 49 U.S.C. § 11503 was essentially recodified at § 11501 effective January 1, 1996. P.L. 104–88, Title I, § 102(a), 109 Stat. 804 (1995).

enterprises are targeted for personal property taxation under South Dakota law, taxation of personal property owned by railroads in this state is discriminatory treatment in violation of the 4–R Act. ·

[¶ 31] Importantly, a federal district court in South Dakota has come to the same conclusion:

> South Dakota clearly does not have a generally applicable ad valorem personal property tax with exemptions, and therefore does not have the type of taxing system approved in *ACF, supra.* The only personal property taxes levied in South Dakota are those specifically set out in SDCL Chapters 10–28 through 10–37. These taxes target only the companies specifically described therein. There is no clearly identifiable common characteristic of the companies, other than the fact that their property is centrally assessed.
>
> BNRR and the other companies centrally assessed by the [Department], as set out in SDCL Chapters 10–28 through 10–37, are an isolated and targeted group which the Supreme Court referred to in *ACF*, 510 U.S. at 345–46, 114 S.Ct. at 851. These taxing statutes do not exempt the non-taxed property, but single out only the designated industries for personal property taxation. South Dakota in SDCL 10–28 has "singled out railroad property for discriminatory treatment," *ACF*, 510 U.S. at 347, 114 S.Ct. at 851, and this chapter still violates the 4–R Act in seeking to tax the personal property of railroads.

*Burlington Northern Railroad Co. v. South Dakota Dep't of Revenue,* Civ.No. 94–3037, 1995 WL 900387 (D.S.D. June 26, 1995).

■ [¶ 32] We are " 'bound by the decisions of the federal courts in their interpretation of a federal statute.' " *St. Cloud v. Leapley,* 521 N.W.2d 118, 122 (S.D.1994) (quoting *First Nat'l Bank of Ariz. v. Carruth,* 116 Ariz. 482, 569 P.2d 1380, 1381 (Ariz. Ct.App.1977)). Consequently, we conclude the trial court properly applied the 4–R Act

by excluding personal property from BNRR's statewide taxable value.

**[¶ 33] V.   Did the trial court err in holding that SDCL 10–28–6 mandates a distribution of state taxable value to counties on a pro rata per mile basis?**

■ [¶ 34] In distributing BNRR statewide taxable value among South Dakota counties, Department used a formula that consisted of two factors. The first factor, which was weighted twenty-five percent, was miles of line in each county. The second factor, which was weighted seventy-five percent, was density of rail traffic in each county. Traffic density was determined by the gross ton miles carried per segment mile. Because Fall River County has a short length of heavily traveled track, County and School District benefitted from the use of a formula that took into consideration traffic density in each county.

[¶ 35] In a motion for partial summary judgment filed before the trial court, BNRR alleged that Department's formula for distributing statewide taxable value among counties is contrary to the law. BNRR argued that SDCL 10–28–16 requires distribution of statewide value among counties solely on the basis of miles of track in each county. At the time in question, SDCL 10–28–16 read:

> The department of revenue shall on or before the fourth Monday in August, each year, transmit to the county auditor of each county through which any railroad runs, a statement showing the length of main track, of main line or lines and the branches thereof and sidetracks within such county, not located within the limits of any city or incorporated town, and the assessed value per mile of such main line or lines and branches and sidetracks *as fixed by a pro rata distribution per mile of the assessed valuation of such property,* except that part located within the limits of cities or incorporated towns, as aforesaid, and such statement shall be entered upon the proper records of the county.[5]

5.  The Legislature has since amended SDCL 10–28–16 to read: "The Department of Revenue shall on or before the fourth Monday in August, each year, transmit to the county auditor of each

county through which any railroad runs, a statement showing the length of main track, of main line or lines and the branches thereof and sidetracks within such county, and the assessed value

(Emphasis supplied.) The trial court agreed with BNRR's interpretation and ordered statewide taxable value be redistributed solely on a pro rata per mile basis. As a result, BNRR's 1993 assessed value in Fall River County decreased from approximately $14,750,000 to $2,050,000.

[¶ 36] County and School District contend the trial court erred for three reasons: (1) distribution of taxable value among counties was not an issue properly before the trial court; (2) the trial court incorrectly interpreted SDCL 10–28–16 and –17; and (3) the trial court's ruling violates Article XI, § 2, of the South Dakota Constitution, which requires uniformity in taxation on property of the same class.

[¶ 37] We conclude the trial court lacked jurisdiction to consider the distribution issue. As noted previously, effective July 1, 1993, the South Dakota Legislature amended SDCL ch 10–38 to permit counties, municipalities, and school districts to appeal Department's taxing decisions concerning centrally assessed property. Pursuant to this amendment, County and School District each filed a separate appeal concerning the valuation of BNRR's operating property for 1993. They contend their appeals were limited to issues concerning the valuation of BNRR's statewide taxable value and did not challenge Department's method of distributing statewide value among counties. They also correctly observe that BNRR did not appeal any aspect of the 1993 assessment, including the method used by Department to distribute statewide taxable value among the counties. Consequently, County and School District assert the trial court erred in considering whether Department properly distributed value among counties.

[¶ 38] BNRR and Department counter that the method of distribution was raised by the notices of appeal filed by County and School District. School District's notice of appeal from Department's assessment read:

NOTICE IS HEREBY GIVEN that the Edgemont School District 23–1 does hereby appeal to the circuit court of Hughes County *from the decision of the South Dakota Department of Revenue determining the final assessed valuation and equalization of the Burlington Northern Railroad for the 1993 assessment year.* A true and correct copy of the appraisal work sheet and report adopted by the South Dakota Department of Revenue is attached hereto as Exhibit "A" and a true and correct copy of the Certification of Value of Burlington Northern Railroad taxable in Fall River County and the Edgemont School District 23–1 is attached hereto as Exhibit "B", both of which exhibits are incorporated herein by reference.

This appeal is taken pursuant to SDCL 10–38–30.

Dated this 24th day of September, 1993.

(Emphasis supplied). The notice of appeal filed by Fall River County read:

NOTICE IS HEREBY GIVEN that FALL RIVER COUNTY, a political subdivision of the State of South Dakota, does hereby appeal to the Circuit Court of Hughes County *from the decision of the South Dakota Department of Revenue of the final assessed valuation and equalization of Burlington Northern Railroad and Black Hills Corporation, for the 1993 assessment year.* A true and correct copy of the appraisal worksheet and report adopted by the South Dakota Department of Revenue for Burlington Northern Railroad is attached hereto as Exhibit "A" and a true and correct copy of the appraisal worksheet and report adopted by the South Dakota Department of Revenue for Black Hills Corporation is attached hereto as Exhibit "B" and a true and correct copy of the Certification of Value of Burlington Northern Railroad and Black Hills Corporation taxable in Fall River County and is attached hereto as Exhibit "C", both of which exhibits are incorporated herein by reference.

This appeal is taken pursuant to SDCL 10–38–30.

---

based on a statewide formula that weights traffic (ton miles) seventy-five percent and miles of track in the county by twenty-five percent. The county auditor shall then distribute the value to

each taxing district where the line runs on a per mile basis within the county." 1996 S.D.Sess.L. ch. 78, § 1.

Dated this 29th day of September, 1993. (Emphasis supplied.)

[¶ 39] The trial court concluded that the notices of appeal necessarily included the issue of distributing statewide value among counties. In his conclusions of law, the trial judge wrote:

The appeals here were by Fall River [County] and Edgemont [School District]. The notices of appeal specifically refer to the *value and certification to Fall River County* thereby putting into issue the South Dakota unit value *and* the *"value certified"* to Fall River County. To determine the "value certified" to Fall River County, this Court must necessarily consider the value distributed to Fall River County under SDCL 10–28–16. This also requires this Court to determine the meaning of SDCL 10–28–16.

(Emphasis in original.)

[¶ 40] We do not agree with the trial court's conclusion that the issue of distribution among counties was properly before it. The 1993 enactment permitting counties and school districts to appeal Department's central assessments differentiates between various issues which may be appealed. The statute provides in pertinent part:

Any public taxing district, governmental subdivision of this state, or affected utility feeling aggrieved by any decision of the Department of Revenue *as to the final assessed valuation of the utility,* **or** *the equalization of the utility's valuation,* **or** *from any decision relating to the allocation* **or** *distribution of such utility's taxable property among the taxing districts or governmental subdivisions of this state* may appeal such decision to the sixth judicial circuit in Hughes County.

SDCL 10–38–30 (emphasis supplied).

[¶ 41] The disjunctive "or" indicates issues of valuation, equalization, allocation, and distribution are separate and distinct. Indeed, the testimony of Department's appraiser of centrally assessed property and Department's brief to this Court indicate that these terms each refer to distinct steps in Department's assessment process. Valuation is the appraisal of the total unit value of the operat-

ing property. Allocation refers to the apportionment of total unit value to the states. Distribution is the process of apportioning statewide value among counties. Finally, equalization converts the countywide value to the level of assessment in each particular county. BNRR's counsel stated during the motion hearing that "allocation" and "distribution" are "terms of art"; allocation refers to apportionment of the total unit value to the states and distribution refers to apportionment of statewide value to counties. Even the trial court seems to acknowledge the conceptual distinctions among these different terms, having separately delineated valuation, allocation, and distribution issues in its findings and conclusions.

[¶ 42] The notices of appeal filed by County and School District only raised the issues of "the final assessed valuation and equalization of Burlington Northern Railroad[.]" Neither notice of appeal includes any express reference to the issue of distribution of statewide taxable value among counties. Nor can we agree with the trial court's conclusions that the simple attachment of Department's appraisal work sheet and its certificate of assessment and equalization for Fall River County impliedly raised the distribution issue. Both of these documents were relevant to an appeal concerning valuation and equalization and did not necessarily implicate the distribution issue. The simple description and attachment of exhibits to a notice of appeal does not mean that all matters contained in the exhibits are appealed.

[¶ 43] Nor do we believe that the trial court's obligation to conduct a de novo review of the issues properly raised by County and School District would have been jeopardized or unduly hampered by its inability to also consider the distribution issue. The trial court was still free to consider the valuation issues raised by County and School District, and could have simply applied Department's weighted formula to arrive at the proper value to be distributed to Fall River County. Furthermore, the statute authorizing governmental appeals of Department's tax decisions refers to appeals concerning valuation, equalization, allocation and distribution in the disjunctive. Therefore, a gov-

ernmental body is free to appeal one, some, or all issues raised by a Department taxing decision. The de novo review contemplated in the statute does not mandate review of all tax issues contained in a decision by Department, regardless of whether some issues have actually been appealed.

[¶ 44] County's and School District's appeals focused on methods used by Department to determine BNRR's total unit value and to allocate that value to the state. The issue of distribution of taxable value to counties was necessarily distinct from the questions of valuation and allocation. By reviewing the distribution issue, the trial court permitted BNRR to raise an issue that had never been appealed by any of the parties.[6] *See* SDCL 10–38–2 (authorizing utilities to appeal Department decisions within fifteen days of receipt of notice of assessed valuation). We therefore conclude the trial court lacked jurisdiction to entertain the distribution issue. The trial court's ruling that statewide taxable value of BNRR should be distributed among counties based on a strict pro rata per mile basis is therefore reversed and Department's previous method of distribution, which includes consideration of track density in each county, must be reinstated.

[¶ 45] Affirmed in part, reversed in part and remanded.

[¶ 46] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

**6.** When asked by the trial court why BNRR was even interested in how its statewide assessed value was distributed among counties, BNRR replied that it would receive a tax credit if more value was apportioned to other areas besides Fall River County.