Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 HTML Code Â© State Bar of South Dakota, 1999
FALL RIVER COUNTY,
a political subdivision of the State of South Dakota,
Plaintiff and Appellant,
v.
SOUTH DAKOTA DEPARTMENT OF REVENUE
and Burlington Northern Santa Fe Railroad Company,
Defendants and Appellees,
and the Counties of Beadle, Brown, Clark, Codington, Corson,
Custer, Day, Edmunds, Grant, Hamlin, Kingsbury, Lake, Marshall,
Minnehaha, Perkins, Roberts, and Walworth,
political subdivisions, for themselves and on behalf of all municipalities,
school districts, townships and any and all other public taxing districts
and governmental subdivisions located therein,
Defendants.
[1999 SD 139]
South Dakota Supreme Court
Appeal from the Sixth Judicial Circuit, Hughes County, SD
Hon. James W. Anderson, Judge
#20883--Affirmed
James Sword, Fall River County State's Attorney, Hot Springs, SD
Attorney for Plaintiff and Appellant Fall River County.
Mark Barnett, Attorney General
David D. Wiest, Assistant Attorney General, Pierre, SD
Attorneys for Defendant and Appellee South Dakota Department of Revenue.
Mark F. Marshall, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD
Richard A. Malm, Dickinson, Mackaman, Tyler & Hagen, Des Moines, IA
Attorneys for Defendant and Appellee Burlington Northern Santa Fe Railroad Company.
Argued Sep 14, 1999; Opinion Filed Oct 27, 1999
SABERS, Justice.
[Â¶1] Fall River County (County) appeals the 1997 tax assessment of Burlington Northern & Santa Fe Railway Company (BNSF) by the South Dakota Department of Revenue (DOR). We affirm.
FACTS 
[Â¶2] BNSF is an interstate railroad company which is the entity being evaluated for tax purposes herein. BNSF was created on December 31, 1996 by merging Burlington Northern Railroad Company (BNRR) and Atchison, Topeka and Santa Fe Railway Company (ATSF). See Fall River County v. SD Dept. of Rev. & BNRR, #20886, a similar case relating to the valuation of predecessor, BNRR, for the 1996 tax year, which is being affirmed and expedited simultaneously. For the County's appeal of the 1993 assessment, see Fall River County v. SD Dept. of Rev., 1996 SD 106, 552 NW2d 620.
[Â¶3] The parent companies of BNRR and ATSF were Burlington Northern, Incorporated (BNI) and Santa Fe Pacific Corporation (SFPC), respectively. BNI and SFPC agreed to merge in 1994 knowing it would take two years to complete. On September 22, 1995, BNI and SFPC formed a separate corporation, the Burlington Northern Santa Fe Corporation. The merger was accomplished through a stock swap where the BNI stock was traded one share for one share in the new entity, while SFPC stock was traded approximately four-tenths of a share for one share in the new entity. On February 1, 1996, this new holding company, Burlington Northern Santa Fe Corporation, was the owner of BNI and SFPC. In turn, BNI owned BNRR, while SFPC owned ATSF.
[Â¶4] On December 30, 1996, BNI merged with SFPC. On December 31, 1996, ATSF merged with BNRR creating a new railroad named Burlington Northern Santa Fe Railway Company (BNSF).(fn1)  On January 1, 1997, BNSF was owned by SFPC. SFPC was owned by Burlington Northern Santa Fe Corporation. As indicated, BNSF is the entity being evaluated for tax purposes herein.
[Â¶5] On January 1, 1997, BNSF owned railroad operating property in 18 counties in South Dakota. Pursuant to SDCL 10-28-1, all railroad operating property within the state is subject to tax assessment. The assessment process requires valuing the railroad operating property as a total unit, allocating a proportionate value to the state, and then distributing the taxable value among local taxing jurisdictions. SDCL 10-28-9, -12, -16. Thus, the railroad property is assessed centrally by DOR, but is taxed by local jurisdictions. SDCL 10-28-21.
[Â¶6] Brad Blinsmon is a property tax specialist employed by DOR to determine the value of centrally assessed properties located within South Dakota on assessment date, January 1 of each year. He has been performing central assessments since September of 1990 and completes approximately fifty central assessments per year. The trial court found that "he is an expert in the area of the central assessment of property."(fn2)  Furthermore, the trial court specifically stated:


The Court considers Mr. Blinsmon to be well qualified as an expert by reason of his education, experience, and training to perform appraisals of railroads and utilities. This Court finds him to be a particularly conscientious, credible, and unbiased witness on unit valuation. Considering each expert's demeanor and motivation in this case, the Court finds Mr. Blinsmon's opinion of value much more persuasive and credible than that of Dr. Ifflander.
[Â¶7] The 1997 assessment of BNSF was difficult due to the fact that it was a new railroad without historical financial information of its own. Pursuant to SDCL 10-28-3, Blinsmon requested information from BNSF to assist him in his assessment. He prepared a preliminary valuation, which reflected a correlated value of $10 billion. Blinsmon then had a meeting, authorized by SDCL 10-28-15, with BNSF's tax representative, Alan Annis, on July 15, 1997. Annis provided additional information to Blinsmon to consider in his valuation. Annis also offered his opinion as to BNSF's value: $7,186,000,000.
[Â¶8] Pursuant to statute, Blinsmon considered three approaches in his assessment process: the income approach, the cost approach, and the market approach.
[Â¶9] Under the income approach, a single year's normal net railway operating income (NROI) is capitalized by the cost of capital (capitalization rate). First, the cost of capital is calculated by using a comparison of equity to debt. Initially, Blinsmon found the equity component to be 62% and the debt component to be 38%, which reflects a capitalization rate of 11.37%. On April 21, 1997, Blinsmon altered the equity to debt comparison to 70/30, making the final capitalization rate 11.94%. Second, BNSF's normal income is determined. Traditionally, DOR uses five years of net railway operating income (NROI) to determine this. However, BNSF was a new entity and the NROI information for the previous five years was not available. Therefore, Blinsmon used the NROI of BNRR and ATSF, the predecessor railroads to BNSF. Special charges, accruals made in advance of the expenditure of money, were incurred by both BNRR and ATSF in those five years. These special charges, which lowered the net income, made it difficult to forecast the normal income of BNSF. BNSF provided "normalized" income information for both BNRR and ATSF; the special charges were added back in and the actual cash expenditures were deducted in the year the expenditures were actually made. Blinsmon calculated a three-year average NROI of $806,466,000, a five-year average of $655,454,600, and a weighted three-year average of $847,471,333. Blinsmon exercised "appraiser's judgment" and found the normal income of BNSF to be $850 million. This normal income, $850 million, was capitalized at 11.94% to yield an income indicator of value of $7,118,927,973.20.
[Â¶10] In the cost approach, the value of the property is the replacement cost. The assessor determines the book value of all operating property from the balance sheet and deducts physical, functional and economic depreciation. Blinsmon found that the purchase accounting method was used in the merger. Purchase accounting is an accounting procedure used when property is acquired at a price higher than the book value of the property. Here, BNI, the holding company of BNRR, acquired SFPC, the holding company of ATSF, in a complicated merger that was completed, in large part, through a swap of stock. The merger required the accountants of ATSF to inflate the book value of some of ATSF assets to match the merger "price." This inflated price was carried over to BNSF's books. It also appeared that some of ATSF's assets were deflated in value. The book value of BNRR's assets, however, were neither inflated nor deflated. This method of purchase accounting resulted in a book value of the ATSF assets above the book value of the BNRR assets, even though BNRR was the larger railroad before the merger.
[Â¶11] The transaction "price" of the merger was approximately $4.5 billion, but the ATSF assets were written up to $9 billion. Purchase accounting had a substantial effect on the book values of BNSF. Blinsmon excluded the purchase accounting impact and determined the net book value of BNSF's plant to be $12,739,034,534. Materials, supplies and non-capitalized leases(fn3)  were added and book depreciation was subtracted to arrive at a net book value of all BNSF's operating property, either owned or leased, of $14,828,142,803. After physical, functional and economic obsolescence was calculated and subtracted, Blinsmon determined BNSF's cost indicator of value to be $6,880,059,559.(fn4) 
[Â¶12] The market approach compares the selling price of property for cash with the subject property to determine the fair market value. Because comparable sales of railroad properties rarely occur, this approach is not used. Alternatively, the stock and debt approach is used which is based on the accounting principle of "assets equal debt plus owner's equity." The first step is to determine the value of the stock of the company being appraised. On the legal assessment date, BNSF's stock was not publicly traded. Therefore, Blinsmon had to determine the value of the stock of the holding company, Burlington Northern Santa Fe Corporation. As of January 1, 1996, the market value of Burlington Northern Santa Fe Corporation's equity was $12,762,142,922. The next step required Blinsmon to determine the value of long and short-term debt of the holding company. Long term debt was $4,546,000,000 and short term debt was $2,311,000,000. These three figures were added to determine the holding company's total value of $19,619,142,922. Then Blinsmon allocated a percentage of this total to BNSF by using the asset method of allocation. Blinsmon concluded that the allocated total stock and debt value for BNSF was $18,928,549,091. Finally, Blinsmon would typically deduct the value of the non-railroad operating property, an amount of approximately $1 billion, from this figure. Here, Blinsmon did not complete that calculation. The stock and debt indicator was substantially higher than the other two indicators of value. This led Blinsmon to believe this indicator was not very reliable so he afforded little weight to this approach.
[Â¶13] Blinsmon reconciled and weighed the three approaches. He relied on the income and cost values and added 10% to compensate for the stock and debt approach because he was concerned that the extremely high stock and debt indicator would have an undue influence on the unit value of BNSF. Therefore, he added the income indicator, $7,118,928,000, and the cost indicator, $6,880,060,000, averaged the two, and added 10% to determine that the value of the operating property of BNSF was $7.7 billion. Of the $7.7 billion, the State of South Dakota was allocated 1.2480%, or $96,096,000. BNSF's personal property, located in South Dakota, valued at $29,168,614, was then subtracted resulting in a state taxable value of $66,927,400. Based on a weighted average formula, with "ton miles" weighed at 75% and "miles of track" at 25%, County was distributed 50.41%, $33,735,312, which was equalized at 85% to $28,675,013.
[Â¶14] County appeals the trial court's valuation of BNSF at $7.7 billion. County asserts that the proper assessment of BNSF was $16 billion. In support of its arguments, County raised six issues on appeal:


1. Whether DOR's appraisal violated SDCL 10-28-13.
2. Whether DOR's appraisal violated SDCL 10-28-3.
3. Whether the trial court was clearly erroneous in accepting DOR's income approach to valuation.
4. Whether the trial court was clearly erroneous in accepting DOR's cost approach to valuation.
5. Whether the trial court was clearly erroneous in accepting DOR's stock and debt approach to valuation.
6. Whether the trial court was clearly erroneous in valuing BNSF at $7.7 billion in 1997.
Issues 3, 4, and 5 are subsumed in issue 6.
STANDARD OF REVIEW 
[Â¶15] "[W]e will review the trial court's factual findings under the clearly erroneous standard." Fall River County, 1996 SD 106, Â¶19, 552 NW2d at 625-26 (citing Kindsfater v. Butte County, 458 NW2d 347, 348 (SD 1990)). "When applying the clearly erroneous standard, the question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been committed." Id. (quoting Hutchinson County v. Fischer, 393 NW2d 778, 781 (SD 1986) (citing In re Estate of Hobelsberger, 181 NW2d 455 (SD 1970)). However, when questions of law are presented, the de novo standard of review is applied. Id. "Statutes are interpreted 'under a de novo standard of review without deference to the decision of the trial court.'" Cleveland v. Tinaglia, 1998 SD 91, Â¶16, 582 NW2d 720, 724 (quoting In re Estate of Jetter, 1997 SD 125, Â¶10, 570 NW2d 26, 28 (citations omitted)).
[Â¶16] 1. Whether DOR's Appraisal Violated SDCL 10-28-13.
[Â¶17] County first argues DOR did not comply with SDCL 10-28-13. More specifically, County asserts that DOR did not afford sufficient consideration to the stock and debt approach.
[Â¶18] On January 1, 1997, SDCL 10-28-13(fn5)  provided:


For the purpose of determining the true and full value of the property of any railroad company the secretary of revenue shall take into consideration the cost approach, the market approach, and the income approach to appraisal. In the market approach, the secretary shall consider the actual or market value of the shares of stock outstanding, the actual or market value of all bonds outstanding and all other indebtedness as shall be applicable, for operating the road. In the income approach, the secretary may consider the company's growth rate and the rate of inflation in determining the capitalization rate. The secretary of revenue may take into consideration any other information or data of any kind or nature which he may deem material in arriving at the true and full value of the property.
This statute does not mandate specific weights to be afforded to each approach. It merely requires that DOR consider all three approaches in its appraisal. Blinsmon did not exclude the stock and debt approach from consideration, but compensated for it at 10% of the overall valuation of BNSF. Therefore, DOR complied with this statute. See gneerally Fall River County, 1996 SD 106, Â¶Â¶21-22, 552 NW2d at 626 (holding the trial court was not clearly erroneous in adopting DOR's valuation of BNRR which reflected more emphasis on the income and cost methods over the stock and debt method).(fn6) 
[Â¶19] 2. Whether DOR'S Appraisal Violated SDCL 10-28-3.
[Â¶20] County next argues that DOR's final appraisal violated SDCL 10-28-3, which mandates that the railroad being appraised furnish to DOR a "signed and sworn" statement that sets forth specific information. This statement must be delivered to DOR by May 1 of each year. SDCL 10-28-3. BNSF did comply with this statute by delivering information with a signed and sworn statement by May 1, 1997.
[Â¶21] Blinsmon testified that he received additional information, regarding the purchase accounting method as well as the normalized income information, from BNSF's tax representative on July 15, 1997 and he used this information in his final appraisal. This, County argues, is a violation of SDCL 10-28-3 since the information received by Blinsmon was untimely and was not "signed and sworn."
[Â¶22] The meeting between Blinsmon and Annis was authorized by SDCL 10-28-15, which provides:


[DOR] shall give notice by registered or certified mail to the officer of any railroad company making a return of property, of the assessment and equalization made by it, and such notice shall fix a time not less than ten days after the mailing thereof, when such railroad company may appear before the secretary of revenue and be heard upon all matters relating to such assessment. The secretary of revenue may promulgate rules pursuant to chapter 1-26 concerning the conduct of such hearings.
SDCL 10-28-15. This statute requires that DOR provide notice of the assessment to the railroad and that the railroad be given an opportunity to be heard "upon all matters relating to such assessment." Id. It does not mandate that the only information the railroad can present at this meeting is information that is "signed and sworn." On the contrary, the statute is non-restrictive in granting the railroad an opportunity to be heard "upon all matters relating to such assessment." Id. Furthermore, under SDCL 10-28-13, DOR is granted wide latitude to consider "any other information or data of any kind or nature which he may deem material in arriving at the true and full value of the property." Information regarding the purchase accounting method as well as the calculation of normalized income for a new entity is certainly material information to DOR's assessment. DOR did not violate SDCL 10-28-3 in receiving and using information provided by BNSF at their July 15, 1997 meeting.
[Â¶23] 3. Whether The Trial Court Was Clearly Erroneous In Valuing BNSF At $7.7 Billion In 1997.
[Â¶24] Finally, County challenges Blinsmon's assessment of BNSF under all three approaches and argues that the trial court was clearly erroneous in valuing BNSF at $7.7 billion. County asserts that the correct value should have been $16 billion. In support of this valuation, County used and relied on an expert witness, Dr. A. James Ifflander. Dr. Ifflander primarily disputed DOR's computation of: (1) the capitalization rate and normal income under the income approach; (2) the purchase accounting adjustments and obsolescence deductions under the cost approach; and (3) the 10% weight afforded to the stock and debt approach. The trial court found that Dr. Ifflander's valuation of $16 billion reflects his reliance "almost exclusively on the stock and debt approach."(fn7) 
[Â¶25] Valuation is a factual question subject to a clearly erroneous review by this court. Fall River County, 1996 SD 106, Â¶25, 552 NW2d at 627. Our statutes set forth requirements when assessing railroads: all operating property must be assessed (SDCL 10-28-1); the unit method must be used in valuation (SDCL 10-28-12); the income approach, cost approach and market approach must all be considered in the unit valuation (SDCL 10-28-13); the railroad must supply a sworn statement to DOR setting forth specific information (SDCL 10-28-3); and a hearing may be held between the railroad and DOR (SDCL 10-28-15). DOR complied with the statutory requirements in assessing BNSF. Beyond these requirements:


There are no settled or infallible rules for the ascertainment of the actual value of railroad property for the purpose of taxation. ... The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property.
Fall River County, 1996 SD 106, Â¶22, 552 NW2d at 626 (quoting Chicago & Northwestern Railway v. Gillis, 82 SD 470, 480, 148 NW2d 581, 587 (1967)). In our prior decision regarding County's appeal of DOR's 1993 assessment of BNRR, we stated: "[t]he valuation of railroad property is not a straightforward exercise." Id. at Â¶22. Thus, the use of discretion, or "appraiser's judgment," is inevitable.
[Â¶26] The trial court specifically found Blinsmon to be "a conscientious, credible, and unbiased witness on unit valuation." On the other hand, the trial court found Dr. Ifflander "to have a bias regarding the valuation of the BNSF" and ultimately found that he was not credible. "Determining the credibility of the witnesses is the role of the factfinder. Where the trial court has resolved conflicts in evidence, we cannot change its findings." Id. (quoting Mash v. Cutler, 488 NW2d 642, 653-54 (SD 1992) (citation omitted)).
[Â¶27] In challenging a tax assessment ruling, the challenger has two presumptions to overcome:


First, there is a presumption that tax officials will do their duty in accordance with the law and not act unfairly and arbitrarily regarding the assessment of property. Second, there is a presumption that [DOR's] valuations are correct.
Brookings Assoc. v. State Bd. of Equal., 482 NW2d 873, 876 (SD 1992) (quoting Hutchinson County, 393 NW2d at 782) (internal citations omitted). "To overcome the presumption [that DOR's] valuation is correct, [the challenger] 'must produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class or was discriminatory.'" Id. (quoting Knodel v. Bd. of County Comm'rs, 269 NW2d 386, 389 (SD 1978)).
[Â¶28] In this case, substantial evidence exists to support the trial court's valuation of BNSF at $7.7 billion. As indicated, County's opposition to this value consisted primarily of testimony from a witness the trial court considered to be biased and less credible than DOR's witnesses. The County did not meet its burden in overcoming these presumptions. Therefore, we hold that the trial court's findings of fact and conclusions of law, including the ultimate adoption of DOR's valuation, are supported by substantial evidence and we affirm the valuation of BNSF at $7.7 billion.
[Â¶29] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.
Footnotes
1.  Finding of Fact #42 states that the new railroad was renamed the Burlington Northern Santa Fe Railway Corporation. We note that this should be Company, not Corporation. 
2.  Blinsmon graduated from USD in 1978 with a major in Business Administration. He was the Director of Equalization for Clark County, South Dakota from April of 1979 to February of 1982. He was the Director of Equalization for Codington County, South Dakota from February 1982 until September 1990. Since 1990, he has been a property tax specialist with DOR. He has taught mandatory annual schools for county directors of equalization since 1990. He has also attended numerous schools and workshops that focused on the appraisal of public utilities and railroads for ad valorem purposes. 
3.  "Non-capitalized leases" represent the lease of property which does not appear on the balance sheet of a company pursuant to certain accounting rules. DOR adds the net non-capitalized leases in the cost approach back to the value to show the total amount of property, either owned or leased, that is used by the BNSF in its railroad operations. 
4.  This figure also reflects an exercise of "appraiser's judgment." 
5.  This statute was amended in 1997. The amendments are stylistic in nature: in the first sentence, the legislature substituted "fair market value" for "true and full value"; in the second sentence, substituted "as may be applicable" for "as shall be applicable"; in the last sentence, substituted "the secretary deems" for "he may deem," and substituted "fair market value" for "true and full value"; and made a change in punctuation. 
6.  It is interesting to note that the same methodology was used in the 1993 assessment of BNRR. Fall River County, 1996 SD 106, Â¶Â¶21-22, 552 NW2d at 626. The 1993 value was affirmed at $3,412,000,000. Id. Â¶Â¶4, 22. There was no appeal that was prosecuted to completion for either the 1994 or 1995 tax assessments. 
7.  For a discussion of the 1993 assessment, see supra note 6.